■ ELITE GOLD, INC., Appellant, v TT JEWELRY OUTLET CORP. et al., Respondents. [819 NYS2d 516]—

Judgment, Supreme Court, New York County (Richard F. Braun, J.), entered October 19, 2005, awarding judgment in favor of defendants dismissing the complaint and awarding the corporate defendant $3,900 on its counterclaim, and bringing up for review an order, same court and Justice, entered January 21, 2005, insofar as it granted defendants summary judgment and denied plaintiff's motion for summary judgment, unanimously reversed, on the law, without costs, the judgment vacated and plaintiff's motion for summary judgment granted. Appeal from aforesaid order unanimously dismissed, without costs, as subsumed in the appeal from the judgment. The Clerk is directed to enter judgment in plaintiff's favor on its second cause of action against the corporate defendant only in the amount of $28,925 plus prejudgment interest from November 1, 2003.

Pursuant to a written lease, defendant rented a booth in plaintiff's leased premises for the period from May 1, 2002 to April 30, 2003 at a monthly rate of $6,500. As pertinent to this appeal, the lease contains a right to extend the lease for two additional years at a rental increase of 5% each year upon timely written notice to plaintiff (¶ 40 of the rider to lease), a no waiver clause which, inter alia, provides that "[t]he receipt by Owner of rent and/or additional rent with knowledge of the breach of any covenant of this lease shall not be deemed a waiver of such breach, and no provision of this lease shall be deemed to have been waived by Owner unless such waiver be in writing signed by Owner" (¶ 24 of the lease), and a holdover clause, which states, "[i]n the event Tenant remains in possession of the Premises after the termination of this lease without the execution of a new lease, Tenant, at the option of Landlord, shall be deemed to be occupying the Premises as a tenant from month-to-month, at a monthly rental equal to one and a half times the Monthly Rent and Additional Rent payable during the last lease insofar as the same are applicable to month-to-month tenancy" (¶ 48 [b] of the rider to lease).

A renewal lease, although tendered, was never executed. Instead, defendant continued possession of the premises and, from May 2003 through March 2004, plaintiff billed, and defendant paid, the monthly rent at the 5% increased rate until defendant notified plaintiff of its intention to vacate by April 30, 2004. By letter dated March 25, 2004, plaintiff advised defendant that since defendant had stayed on after the original termination date of the lease and paid the extension term rate,

it was plaintiff's position that defendant had agreed to the lease extension, which entitled plaintiff to collect rent for an additional 12 months at the third-year monthly rate of $7,166.25, or a total of $85,995. As to defendant's position that it had been a month-to-month tenant for the previous 11 months, plaintiff claimed alternatively that defendant would be liable for holdover rent of 150% of the monthly rent in the amount of $41,925.

The motion court, in dismissing the complaint, correctly found that defendant was a month-to-month tenant (Real Property Law § 232-c). Although a renewal lease reflecting the agreed upon yearly 5% increase was tendered, it was never executed. However, given the lease's clear and unambiguous language, the court erred in finding that the landlord waived its right to collect the higher holdover rent by billing defendant at the lower rate through March 2004 (see *Excel Graphics Tech. v CFG/ AGSCB 75 Ninth Ave.*, 1 AD3d 65, 69-70 [2003], *lv dismissed* 2 NY3d 794 [2004]). By doing so, the motion court effectively rendered the no waiver clause of the lease meaningless (see *Helmsley-Spear, Inc. v New York Blood Ctr.*, 257 AD2d 64, 69 [1999]) and failed "to give meaning to all of its terms" (*Mionis v Bank Julius Baer & Co.*, 301 AD2d 104, 109 [2002]). Here, in the absence of any claim that plaintiff knew of defendant's intention not to continue possession of the remainder of the lease renewal term, it is not "unmistakably manifested that plaintiff intended to surrender its right[ ] to [holdover payments], and such waivers should not be lightly presumed" (*Navillus Tile v Turner Constr. Co.*, 2 AD3d 209, 211 [2003] [internal quotation marks omitted]). Accordingly, plaintiff is entitled to judgment on its second cause of action solely against the corporate defendant giving credit for the $13,000 security deposit. Because the guaranty clause created an obligation on the part of the individual defendant guarantor only as to "any renewal, change or extension of the Lease," upon the expiration of the lease it lapsed and cannot be a vehicle to bind the individual defendant (see *665-75 Eleventh Ave. Realty Corp. v Schlanger*, 265 AD2d 270, 271 [1999]). Concur—Buckley, P.J., Andrias, Williams, Gonzalez and Malone, JJ.